UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **FRANK NOVAK**,<br><br>    *Plaintiff*,<br><br>v.<br><br>**CHARTER COMMUNICATIONS INC.**,<br><br>    *Defendant.* | Case No.:<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Frank Novak ("Plaintiff" or "Novak"), by and through his attorneys, alleges the following against Charter Communications, Inc. d/b/a "Spectrum" ("Defendant", "Charter" or "Spectrum"):

### INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* and the TCPA's corresponding regulations.

### BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on

the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3).

8. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report*

*to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over Defendant, Charter, a Delaware corporation, which systematically conducts business in the State of Michigan.

13. Additionally, Defendant called Plaintiff unlawfully on his cell phone with a "248" area code, which is associated with Metropolitan Detroit, in the State of Michigan.

14. Defendant also used a "248" area code number to call Plaintiff.

15. Through those acts, Charter knowingly and purposefully availed itself to the State of Michigan.

3

16. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced the associated harm within this District.

17. Accordingly, personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. §1391 (b)(1) and §1391 (b)(2).

**PARTIES**

18. Plaintiff, Frank Novak is a natural person who resided in Farmington Hills, Michigan, at all times relevant hereto.

19. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

20. Defendant Charter is a corporation with its principal place of business, head office, or otherwise valid mailing address at 400 Atlantic Street, Stamford, Connecticut 16901.

21. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

22. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**CHARTER AND ITS USE OF "RESELLERS" TO SELL SPECTRUM CABLE AND INTERNET**

23. Charter hires call center-vendors (mostly -but not exclusively -overseas) it designates "resellers."

24. Charter ostensibly instructs its "resellers" not to unlawfully telemarket to consumers, while at the very same time providing financial incentives for those same resellers to telemarket Spectrum services.

25. Specifically, Charter offers "resellers" commissions based on sale volume, and fails to monitor or oversee its resellers for compliance.

4

26. Accordingly, when resellers successful sell Charter services through telemarketing and robocalls, Charter substantially profits from those allegedly "prohibited" calls.

27. Defendant tacitly encourages unlawful robocalls by its resellers by incentivizing them to behave in the manner reflected above, while at the same time professing intolerance of such practices to the general public.

28. Charter does not monitor inbound and outbound calls by its resellers. Accordingly, when consumers complaint of receiving robocalls for Spectrum cable and internet, Charter will claim to lack knowledge of any such calls, and instead suggests the calls were "spoofed" by unidentified nefarious actors.

29. While Charter does not generally oversee or monitor phone activities of its resellers, it enters into contracts, which afford Charter the *ability* to direct and control the resellers' marketing activities.

30. Further, Charter provides its resellers with marketing materials, email addresses and access to Charter's online portal.

31. Accordingly, even if unlawful robocalls are in contravention of the language of Charter's reseller agreements, an agency relationship exists and resellers who make robocalls to sell Charter products and services, are acting in furtherance of that agency relationship by selling Spectrum cable and internet plans, from which Charter profits.

32. Further, Charter ratifies TCPA violations by accepting sales and leads from its resellers who violate the TCPA while marketing Spectrum cable and internet.

## NOVAK AND CHARTER'S TELEMARKETING CAMPAIGN

33. At all times relevant hereto, Plaintiff owned a cell phone, the number for which was (248) XXX-7217.

5

34. At all times relevant hereto, Plaintiff primarily used that cell phone for personal purposes, such as speaking with friends and family.

35. Novak registered that cell phone number on the Do Not Call Registry on or around February 19, 2004, in order to obtain solitude from unwanted telemarketing and solicitation calls.

36. Beginning in or before the Spring of 2020, Defendant (directly and/or through independently owned Charter "resellers") carried out a telemarketing campaign toward Plaintiff on his cellular telephone for the purposes of soliciting Spectrum cable and internet plans.

37. Novak, however, had not been a Charter customer for approximately 15 years.

38. Since the termination of his Spectrum cable plan 15 years prior, Plaintiff never sought information about Charter's Spectrum cable plans.

39. Novak did not consent to being called by or on behalf of Defendant.

40. The calls were not made for "emergency purposes," but rather for telemarketing purposes.

41. When Novak would answer the calls, or when Charter would leave a voicemail, Novak would hear a pre-recorded message that played soliciting Spectrum cable plans.

42. Novak could tell the messages were pre-recorded because the voice sounded robotic, computerized and non-interactive.

43. Furthermore, the messages were generic and devoid of any personalized content.

44. For instance, in a voicemail received on February 27, 2024, the message stated: "hi there, this is to inform you that Spectrum has applied a 50% discount offer on your monthly bill, which is expiring today. To keep this offer active, please call back at 833-381-3450 from 8:00 am to 5:00 pm Pacific Standard time."

45. The undersigned counsel called back that number and confirms it was a Spectrum call center. Specifically, a automated message stated "welcome to Spectrum" after the call was answered.

46. Charter placed unwanted telemarketing calls to Plaintiff, without his consent on instances including but not limited to:

- May 29, 2020 from 248-563-8763;
- July 28, 2020 from 248-563-8252;
- September 23, 2020 from 248-663-6266;
- October 1, 2020 from 248-563-1929;
- December 16, 2020 from 248-435-8188;
- January 25, 2021 from 248-653-3725;
- March 19, 2021 from 248-737-7678;
- April 7, 2021 from 248-364-7744;
- June 16, 2021 from 248-761-5041;
- July 20, 2021 from 248-241-2846;
- October 1, 2021 from 248-363-2563;
- October 21, 2021 from 248-759-8458;
- January 3, 2022 from 248-563-2534;
- April 15, 2022 from 248-775-2674;
- July 8, 2022 from 248-431-4185;
- September 22, 2022 from 248-596-4673;
- Nov 14, 2022 from 248-262-7095;
- March 9, 2023 from 248-579-4401;
- April 4, 2023 from 248-215-0563;
- February 27, 2024 from 970-578-7366; and
- February 27, 2024 from 833-381-3450.

47. Upon information and belief, Plaintiff received additional calls by or on behalf of Charter, not included in the above list.

48. Each of those calls featured a pre-recorded message and/or a live agent promoting Spectrum cable and internet.

49. Plaintiff found Defendant's repeated calls annoying, frustrating and harassing.

50. As a result of those calls, Plaintiff feels that his privacy had been invaded.

//

7

**Direct and Vicarious Liability**

51. To the extent Charter outsources its illegal robocalling to various agents, call centers and vendors, it is still liable for calls that violate the TCPA.

52. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network*, 28 FCC Rcd at 6588 (internal citations omitted).

53. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

54. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*, at 6593.

55. Charter hired, permitted, and enjoyed the benefits of agents, call centers and vendors' mass robocalling.

56. Charter acted as the principal, and the agents, call centers and vendors (whose identities are still unknown) acted as its agents.

57. Charter is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from unlawful robocalls made by agents, call centers and vendors.

58. Because Plaintiff has not yet had the benefit of discovery, it us unknown which of the calls at issue were made by third-party "resellers", and which, if any of the calls were made directly by Charter.

59. To the extent the calls at issue were made by third parties, the calls were made with the express and/or implied permission of and for the benefit of Charter, and or through conduct ratified by Charter, which would render Charter vicariously liable.

60. To the extent certain calls were made directly by Charter, it would be directly liable for those calls.

## COUNT I
## DEFENDANT VIOLATED 47 U.S.C. § 227(b)(1) OF THE TCPA

61. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

62. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

63. Defendant initiated multiple telephone calls to Plaintiff's cellular telephone number using a pre-recorded voice.

9

64. Defendant's calls were not made for "emergency purposes."

65. Defendant's calls to Plaintiff's cellular telephone were made without any prior express consent.

66. Defendant's acts as described above were done with reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of predictable effect of harassing Plaintiff.

67. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

68. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## DEFENDANT VIOLATED 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) OF THE TCPA

69. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

70. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

71. Defendant placed solicitation calls to Plaintiff's cell phone (which he used for residential purposes) despite the fact that Plaintiff's number has been on the Do Not Call Registry since February 19, 2004.

72. Defendant's acts as described above were done with reckless, wanton and negligent disregard for Plaintiff's rights under the law and the calls had the predictable impact of harassing Plaintiff.

73. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

74. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## Prayer for Judgment

**WHEREFORE**, Plaintiff, **FRANK NOVAK**, respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

d. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(B));

e. Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227 (c)(5)(C);

f. Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); and

g. Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, FRANK NOVAK, demands a jury trial in this case.

Respectfully submitted,

DATED: March 6, 2024

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Michigan Attorney ID P84351
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 ext. 104
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
Email: teamkimmel@creditlaw.com